IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 6, 2005

**STATE OF TENNESSEE v. RYAN SANDSON**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-08067     Joseph B. Dailey, Judge**

_____

**No. W2004-02883-CCA-R3-CD  - Filed February 7, 2006**

_____

The defendant, Ryan Sandson, was found guilty by a Shelby County jury of aggravated robbery, a Class B felony, and was sentenced as a standard offender to eleven years, six months in the Department of Correction. On appeal, he raises two issues: (1) whether the evidence was sufficient to support his conviction; and (2) whether his sentence was excessive. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Robert Wilson Jones, Shelby County Public Defender; Garland Ergüden, Assistant Public Defender (on appeal); and Harry Sayle, Assistant Public Defender (at trial), for the appellant, Ryan Sandson.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Theresa McCusker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

**Trial**

At approximately 9:00 a.m. on July 30, 2003, Michael Johnson, an employee of J&B Company on Shelby Drive in Memphis, was robbed at gunpoint in the store by the defendant. Johnson testified that he was at work by himself when:

> [The defendant] came in and asked to use the phone, and I was on the phone
> at the time. I said, "Hang on a second." And we had a snack tray on the counter, and

he asked how much the snacks were; I told him; he gave me a $5 bill.[1] I[] made change out of the register and handed the change to him. He put the change in his pocket, and then when he came back up with his hand, he had a pistol in his hand, and he pointed a gun at me and told me to give him all the money out of the cash register and out of my wallet.

After taking the money,[2] the defendant told Johnson, "Go in the backroom and take your pants of[f]." The defendant then had Johnson "kneel down in the floor" where he "tied [Johnson's] hands behind [his] back with the phone cord," tied his feet with a belt, and took his truck keys. After the defendant left, Johnson was able to free himself and "hit the silent alarm." Johnson, who could see the defendant in the driveway "t[r]ying to get out onto Shelby Drive" in Johnson's truck, then "grabbed the crowbar out of the kitchen" and approached the truck, yelling at the defendant. In response, the defendant "opened the door and pointed the gun at" Johnson, who "ducked in behind the front door of the business and dialed 911 on [his] cell phone." The defendant then abandoned Johnson's truck in the driveway with the engine running and took off "running down the street." The police arrived and Johnson gave them the following description of the robber: "He had on a jogging suit like a dark gray or black jogging suit with a gray stripe - light gray stripe. And he had a black ball cap on and a pair of - looked like lady's sunglasses with rose-colored lenses." Johnson testified that within an hour of their arrival, the police brought the defendant back to the store to be identified. Johnson explained:

> [The police] just asked me to look through the window of the front door of the business and see if I could identify him, and they got [the defendant] out of the backseat of the squad car and had me look at him. And then the officer came in and said, "Is that him?" I said, "Yes."

Johnson then went to the police station where he identified a photograph of the defendant as the man who robbed him and had $126 returned to him.

On cross-examination, Johnson acknowledged that when the police brought the defendant back to the store to be identified, "[h]e had on shorts and a T-shirt" and was not wearing a hat or rose-tinted glasses. He also testified that when he identified the defendant's photograph at the police station, the police only showed him the defendant's photograph and not a photospread containing photographs of other people. Asked what he recognized about the defendant, Johnson said "his eyes" but denied noticing any other markings or tattoos on the defendant's face.

Officer Audrey Cartwright, of the Memphis Police Department, testified that she was called to the robbery scene to process it for fingerprints but was unable to obtain any. Cartwright said when

---

[1]The defendant bought a "bag of chips and a candy bar." He, however, left the premises without his purchased goods.

[2]Johnson said the defendant took "about $125" from him.

the defendant was brought back to the store for identification, she heard him say, "I want my candy and my potato chips back because I paid for them."

Officer Terry Lyons, of the Memphis Police Department Robbery Bureau, testified that he investigated the robbery. He said the uniform officers who brought the defendant to the police station also brought in $126 they recovered from the defendant. Lyons said he returned this money to Johnson but acknowledged that he did not have personal knowledge of where the money came from. Asked why there was not a photospread identification done, Lyons explained:

> The [defendant] was brought back to the scene and identified by the victim, Mr. Johnson. And then [the defendant] came to the robbery office. He was placed on our bench before Mr. Johnson came in. When Mr. Johnson was brought in, he saw [the defendant] face-to-face again; so there was no need to do a photospread because of his two close encounters with him."

The defendant testified that at the time of the robbery, he "was coming from a packaging company off of Shelby Drive" and headed toward "The Kettle on Lamar and Winchester" to make a phone call. He denied robbing Johnson, ever owning rose-colored sunglasses or a gray-striped jogging suit, or saying he wanted his chips and candy bar back. The defendant also testified that he had tattoos on his face by his eyes. On cross-examination, the defendant claimed he was just walking down the railroad tracks to get to The Kettle when the police "[c]ame out of nowhere, pulled their guns up; told me to assume the position." He said he guessed he was just at the "[w]rong place at the wrong time."

## Sentencing Hearing

At the sentencing hearing, the State asked that the defendant be sentenced "to the upper end of Range I to twelve years." This request was based on the defendant's presentence report which showed the defendant had a 1997 Mississippi conviction for carjacking, for which he was sentenced to five years, and a 2002 conviction for burglary other than a habitation in Marshall County, for which he was fined $535. The report also noted that Marshall County had an active warrant for the defendant's arrest for a pending burglary charge for which a detainer was going to be placed. Defense counsel, while acknowledging the defendant had a prior felony conviction for carjacking, maintained that the burglary conviction was a misdemeanor.

At the conclusion of the sentencing hearing, the trial court, relying on the presentence report, determined that the defendant "has two prior convictions, one we know is a felony [the carjacking], and the other [burglary other than habitation], at least by title, would be a felony, although it may be a misdemeanor; but a conviction, nonetheless." The court also noted that the defendant had "a pending case with a detainer lodged against him." Consequently, applying enhancement factor (1), the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the range, see Tenn. Code Ann. § 40-35-114(1) (Supp. 2005), the trial court enhanced the defendant's sentence to eleven years and six months.

## ANALYSIS

### I.  Sufficiency of the Evidence

On appeal, the defendant argues that the evidence is insufficient to support his conviction because the "conviction rests solely upon the identification of the robbery victim" and "this identification was mistaken."  Specifically, he contends that the victim did not get a "good look" at him because the victim failed to notice the tattoos on his face.  Further, the defendant notes that the victim's description of the robber's clothing did not match the clothing he was wearing when the police found him on the railroad tracks.

When the sufficiency of the convicting evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact.  See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).  "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."  State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).  A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient.  See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

We conclude there was more than sufficient evidence in this case to establish the defendant's identity as the armed robber.  The victim positively and unequivocally identified the defendant at the scene of the robbery, at the police station, and in court.  A victim's identification of a defendant as the perpetrator of an offense is, alone, sufficient to establish identity.  See State v. Hill, 987 S.W.2d 867, 870 (Tenn. Crim. App. 1998); State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993).  We find a jury could easily have surmised that the defendant discarded his jogging suit and rose-tinted sunglasses prior to the police apprehending him.  In addition, the evidence showed that the defendant demanded his candy bar and chips back because he had purchased them.  We, therefore, conclude the evidence was sufficient to support the defendant's conviction.

### II.  Sentencing

The defendant also argues that his sentence of eleven years and six months is excessive.  When a defendant challenges the length of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the

appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (Supp. 2005). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

Since the defendant challenges his sentence, he has the burden of proving that his sentence was erroneous. See Tenn. Code Ann. § 40-35-401 (Supp. 2005), Sentencing Commission Cmts.; see also Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311. This court must consider the following factors when conducting a *de novo* review of a sentence: (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, 210 (Supp. 2005 & 2003); State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

As a Range I, standard offender convicted of a Class B felony, the defendant was subject to a sentence ranging from eight to twelve years. See Tenn. Code Ann. § 40-35-112(a)(2) (2003). Under the 1989 Sentencing Act, the sentence to be imposed for a Class B felony is presumptively the minimum in the range unless there are enhancement factors present. Id. § 40-35-210(c) (Supp. 2005). Procedurally, the trial court is to increase the sentence within the range based upon the existence of any applicable enhancement factors and then reduce the sentence as appropriate based on applicable mitigating factors. Id. § 40-35-210(d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Id. § 40-35-210, Sentencing Commission Cmts.; State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).

In his brief, the defendant notes that he is not arguing "that the trial court may not increase his sentence above the minimum based upon his prior record. Rather, he contends that the trial judge gave too much weight to the one proven felony and what he presumed to be a second felony, in conjunction with a pending charge." As previously stated, the trial court applied enhancement factor (1) to enhance the defendant's sentence toward the maximum in the range. The presentence report reflects the defendant has two prior convictions, carjacking and burglary other than a habitation. Due to the seriousness of his prior record, we cannot conclude that the trial court abused its discretion by enhancing the defendant's sentence within the sentencing range. Accordingly, this issue is without merit.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the defendant's conviction and sentence.

_____
ALAN E. GLENN, JUDGE